UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————X

THE NEW YORK TIMES COMPANY,                   :
                                              :
                              Plaintiff,      :
              v.                              :        No. 20-cv-3063
                                              :
DEPARTMENT OF HEALTH & HUMAN SERVICES,        :
                                              :
                              Defendant.      :
—————————————————————————X
                                              :
DOW JONES & COMPANY, INC.                     :
and CHRISTOPHER WEAVER,                        :
                                              :
                              Plaintiffs,     :
                                              :
              v.                              :        No. 20-cv-3145
                                              :
DEPARTMENT OF HEALTH & HUMAN SERVICES,        :
                                              :
                              Defendant.      :
—————————————————————————X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

David E. McCraw
Al-Amyn Sumar
Alexandra Settelmayer
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: 212-556-4031
Fax: 212-556-4634
Email: mccrad@nytimes.com
        al-amyn.sumar@nytimes.com
        alexandra.settelmayer@nytimes.com

*Counsel for Plaintiff The New York Times
Company*

Seth D. Berlin
Matthew E. Kelley (admitted *pro hac vice*)
Ballard Spahr LLP
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
Phone: 202-508-1122
Fax: 202-661-2299
Email: berlins@ballardspahr.com
        kelleym@ballardspahr.com


*Counsel for Plaintiffs Dow Jones &
Company, Inc. and Christopher Weaver*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.  Section 1675 Applies to Reviews of Medical Care by Medical Providers, Not an Investigation of Criminal Conduct and Administrative Failures by an Administrative Agency ............................................................................................................................ 3

    II. The Government Has Failed to Satisfy Its Burden in Justifying Withholding Under Exemption 5 ....................................................................................................................... 8

    III. The Government Has Failed to Satisfy Its Burden for Withholding Under Exemption 6 .. 11

    IV. If Needed, *In Camera* Review Is Warranted ................................................................ 12

CONCLUSION ................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adelante Alabama Worker Center v. U.S. Department of Homeland Security*,
   376 F. Supp. 3d 345 (S.D.N.Y. 2019).................................................................. 9, 10

*Environmental Protection Agency v. Mink*,
   410 U.S. 73 (1973) ............................................................................................... 8

*Johnson v. Executive Office for United States Attorneys*,
   310 F.3d 771 (D.C. Cir. 2002) ........................................................................... 12

*Kulik v. United States*,
   2016 U.S. Dist. LEXIS 84802 (D. Alaska June 28, 2016) ................................ 7, 8

*National Security Archive v. CIA*,
   752 F.3d 460 (D.C. Cir. 2014) ............................................................................. 9

*NRDC v. United States EPA*,
   2019 U.S. Dist. LEXIS 148611 (S.D.N.Y. Aug. 30, 2019) ................................ 10

*Ossen LLC v. United States Central Command*,
   2019 U.S. Dist. LEXIS 169751 (S.D.N.Y. Sept. 30, 2019)............................ 11, 12

*Parker v. United States*,
   2020 U.S. Dist. LEXIS 24911 (D. Neb. Feb. 13, 2020) ...................................... 7

*Soto v. United States*,
   2014 U.S. Dist. LEXIS 133134 (S.D. Cal. Sep. 22, 2014) .................................. 7

*Tigue v. U.S. Department of Justice*,
   312 F.3d 70 (2d Cir. 2002)................................................................................. 10

**Statutes**

25 U.S.C. § 1603 ........................................................................................................ 3

25 U.S.C. § 1675 ................................................................................................ *passim*

5 U.S.C. § 552 .......................................................................................................... 13

FOIA Improvement Act of 2016,
   Pub. L. No. 114-185, 130 Stat. 538 (2016).......................................................... 2

## PRELIMINARY STATEMENT

In its briefing, the Government simply buries its head in the sand. It completely ignores the substantial and undisputed factual record submitted by Plaintiffs. It pretends that a statute designed to shield reviews of medical care applies to criminal and administrative misconduct. It argues that a deliberative process privilege applicable to policy deliberations somehow shields a largely factual report issued after a new policy was issued. And, it belatedly contends that a privacy exemption might apply, even though much of what is at issue is already public and any privacy interest is outweighed by the substantial public interest in how IHS ignored and sought to cover up Stanley Patrick Weber's long pattern of criminal conduct.

First, no matter how many times the Government repeats the phrase "medical quality assurance," it cannot escape the fact that the Integritas Report is not about medical care and therefore is not shielded by FOIA Exemption 3 and 25 U.S.C. § 1675. Rather, as the Government is ultimately forced to concede in its reply/opposition memorandum, the report focuses on "administrative and criminal" conduct, including wrongdoing by an Indian Health Service doctor who sexually abused children for decades and the IHS officials who looked the other way or facilitated his crimes. Def.'s Reply Mem. of L. in Supp. of Summ. J. and Opp. to Pls.' Mot. for Summ. J., Dkt. No. 26, at 9 ("Gov't Reply Br."). In advancing its argument, the Government simply ignores the clear language of the statute, the terms of which focus on records involved in the evaluation of actual medical care. It likewise ignores the unequivocal statement by the vice-chair of the Senate Indian Affairs Committee that the statute does not apply to the Integritas Report. And, the Government entirely ignores the declaration of a former IHS doctor who testified that the Integritas investigators who interviewed him were former law enforcement officers, not medical professionals, and that they did not question him about medical care. At the

end of the day, the Government's principal argument that Section 1675 bars release of the

Integritas Report reduces to the proposition that the report is a medical quality assurance report

because IHS says so. This is clearly insufficient to shield from disclosure this taxpayer-funded

investigative report about the agency's failed response to criminal misconduct.

Second, the Government's invocation of the deliberative process privilege fares no better.

Despite the Government's bald and conclusory assertions that the Report's principal purpose was

to formulate policy, the balance of the Government's briefing and its own official's declaration

confirm that (a) it engaged Integritas to conduct a retrospective, factual review of the agency's

compliance with a prior policy and (b) the agency did so only after it had already announced a

new, overhauled set of policies aimed at preventing sexual abuse. Moreover, the Government

does not dispute that the factual aspects of the report are not subject to the privilege as a matter

of law and must be disclosed. Simply put, the report's detailed factual review of what went

wrong and who was responsible, issued after a new policy was already issued, is not a policy

deliberation that would qualify for protection under the privilege – even without considering the

added burdens imposed on the Government by the FOIA Improvement Act of 2016, Pub. L. No.

114–185, 130 Stat. 538 (2016), which the Government has not even come close to satisfying.

Finally, the Government's attempt to justify withholding some undefined "personal

information" from the Integritas Report under Exemption 6 is too little, too late. The

Government has not specified the information it seeks to withhold, has not made any specific

showing that such information remains private despite the many prior official reports on this

subject, and has not explained how any such personal privacy interests would overcome the

intense public interest in having full transparency about IHS's handling of Weber's conduct.

Particularly where Plaintiffs had confirmed that they do not seek identifying details about any

victim of abuse who has not been publicly identified, any remaining personal privacy interests are outweighed by the substantial public interest in how IHS officials addressed Weber's criminal conduct.

At bottom, IHS clearly wants to keep this examination of its devastating administrative failures from public view. But the law does not allow it to do so because the Integritas Report is neither the medical quality assurance review nor the narrowly focused policy proposal IHS claims it to be. The Court should deny the Government's motion for summary judgment, grant Plaintiffs' cross-motion, and order the Integritas Report released to the public.

## ARGUMENT

**I.    Section 1675 Applies to Reviews of Medical Care by Medical Providers, Not an Investigation of Criminal Conduct and Administrative Failures by an Administrative Agency**

The Government's claim that 25 U.S.C § 1675 applies to the Integritas Report is contradicted both by the language of the statute and by the factual record. Section 1675 provides that "*[m]edical* quality assurance records created by or for any Indian *health program* or a *health program* of an urban Indian organization as part of a *medical* quality assurance program are confidential and privileged." 25 U.S.C. § 1675(b), (g) (emphases added). The language of the statute is unambiguous: Section 1675 is limited to reports on *medical* quality – not other tangentially related topics – and then applies only to such reports created "by or for any Indian *health program*." *Id.*

To begin, "Indian health program" is a statutorily defined term that does not encompass IHS, and therefore the Integritas Report does not come within the statute. *See* 25 U.S.C. § 1603(12) (definitions). The Government initially tried to shoehorn the Integritas Report into the statute by vaguely referencing a "medical quality assurance program." Def.'s Mem. of L. in

Supp. of Summ. J., Dkt. No. 20, at 7 ("Gov't Br."). When confronted with the statutory

language, the Government changed tack and now asserts that Section 1675 ought to be broadly

read to apply to reports carried out by the parent agency, IHS, not just the medical programs it

oversees. Gov't Reply Br. at 3–4. Had Congress intended to cover IHS at the agency level under

Section 1675, it could have done so unambiguously. But the plain language of the statute makes

clear Congress did not do so – and understandably so. A medical quality assurance review is an

undertaking by and about health care professionals, not a parent agency's review of

administrative conduct. On that basis alone, the Government's argument fails to justify

withholding under Section 1675 and Exemption 3.

Even if the Government could establish that the Integritas Report was created for a

specific Indian health program, Section 1675 would still be inapplicable because the report is not

a "medical quality assurance" record. The Government concedes, as it must, that "the issues

relating to Weber were 'administrative and criminal' in nature.'" Gov't Reply Br. at 9. The

Integritas Report, therefore, is also necessarily about such administrative and criminal matters,

namely, Weber's repeated sexual assaults and IHS's administrative failures in preventing the

pedophilic doctor from preying on children. In no conceivable way is that medical care. The

Government hopes to dodge that inescapable conclusion by asserting that the report still comes

within Section 1675 because it generically "relat[es] to the safety of IHS patients and ensur[es]

their access to proper medical care." *Id*. at 4. The Government's reading of the statute proves too

much. The Government's interpretation would make a report on virtually any part of IHS's

operations – the safety of hospital parking lots, the quality of security guards, or the efficiency of

a hospital's telephone system – a medical quality issue. But there is no mystery as to the scope of

the statute. It protects reports by medically trained reviewers, who are asked to candidly "assess

the quality of medical care" that has been provided by medical personnel – not an administrative review by law enforcement personnel addressing tangential administrative processes or operations that are non-medical. *See* 25 U.S.C. § 1675(a)(2).

The Government protests that the "presence of criminal conduct" should not preclude the agency from undertaking a medical quality assurance review. Gov't Reply Br. at 9. True enough. But Section 1675 requires that the focus of any review be on *medicine*, whether criminality is involved or not. The record here establishes that medicine was not the target of Integritas's investigation. The report's fact-finding was not even aimed at medical facilities in many instances. The investigation looked into Weber's criminal conduct at campgrounds, pizza restaurants, and Weber's own home. Exhibit 1 to the Decl. of Matthew E. Kelley, Dkt. No. 25, at 6 (hereinafter, "Ex. __"). The undisputed record before the court also shows that the Integritas investigators were not medical experts or experienced in medical procedures. The undisputed – and unmentioned – declaration of Dr. Mark P. Butterbrodt confirms that the investigators who interviewed him were retired from the U.S. Marshals Service. Decl. of Mark P. Butterbrodt, Dkt. 24, ¶ 10 ("Butterbrodt Decl."). They asked nothing about medical care and instead queried him about IHS's administrative dealings with Weber and its handling of complaints against him. *Id.* ¶ 11. None of that should come as a surprise. Integritas's leader, Carl Caulk, has no background in medicine but instead maintained a career in the U.S. Marshals Service for approximately 20 years.[1]

The Government also does not – and cannot – contest what the record shows about the stated purpose of the Integritas investigation. According to the Government's own declarant, the purpose of the report was to assess "the effectiveness of IHS policies and procedures governing

---

[1] *See* Ex. 28 (LinkedIn Resume of Integritas's Principal Carl Caulk, https://www.linkedin.com/in/carl-caulk-69886a66/).

the reporting of allegations of sexual abuse by an IHS health care provider." Decl. of Jonathan Merrell, Dkt. No. 21, ¶ 7 ("Merrell Decl."). Integritas was hired to (a) "identify facts relating to IHS's policies and procedures regarding the reporting of allegations of sexual abuse of IHS patients by clinical staff," (b) "identify any possible process or system failures and the contributing causes of any such process or system failures," and (c) "identify improvements IHS could implement to better protect patients." Merrell Decl. ¶ 9; *see also* Ex. 24 (solicitation for investigation contract eventually awarded to Integritas). Nothing about any of that suggests that the investigators were tasked with assessing medical care provided to patients.

In short, weighed against the Government's barebones assertion that Integritas was conducting a medical quality assurance review is the actual evidence of what happened: Former law enforcement officers were dispatched to review the Weber case and compliance with the policies and procedures then in place governing the reporting of sexual abuse. Integritas could not possibly have provided IHS with an analysis as to the agency's provision of medical care, nor did it. The report may have been a review, but it was not a medical quality assurance review.

Finally, the Government disputes the notion that peer review is the touchstone of medical quality assurance reviews. Gov't Reply Br. at 5. It pins its argument on the absence of the words "peer review" in the statute, unlike a similar statute governing the Department of Defense. *Id*. But the Defense Department statute simply reinforces the reality that peer review is at the heart of medical quality assurance review. The legislative history of Section 1675 shows that the law was enacted to fill the "inadvertent gap in protection for peer review activities."[2] The IHS website itself states that the provision governing the "Confidentiality of Medical Quality

---

[2] Ex. 35 (Reforming the Indian Health Care System: Hearing Before the S. Committee on Indian Affairs, 111th Cong. 159 (2009) (Response to written questions by Valerie Davidson of the Alaska Native Tribal Health Consortium), https://www.govinfo.gov/content/pkg/CHRG-111shrg53636/html/CHRG-111shrg53636.htm).

Assurance Records" "allows for *peer reviews* to be conducted within Indian health programs without compromising confidentiality of medical records" and "[p]rovides protections for participants in the *peer review* process."[3] IHS cannot walk away from its own statements to advance its litigation agenda, nor can it ignore the statements of Senate Indian Affairs Committee Vice-Chair Tom Udall confirming that Section 1675 does not apply here.[4]

The Government also makes little effort to confront the precedents supporting Plaintiffs' reading of Section 1675. It offers only a passing reference to *Soto v. United States*, 2014 U.S. Dist. LEXIS 133134 (S.D. Cal. Sep. 22, 2014). Gov't Reply Br. at 6–7. The omission is telling. *Soto* holds that Section 1675 applies to "documents that a medical institution would produce and compile to assess its *quality of patient care*." 2014 U.S. Dist. LEXIS 133134, at *7 (emphasis added). As to *Parker v. United States*, 2020 U.S. Dist. LEXIS 24911 (D. Neb. Feb. 13, 2020), the Government mistakenly suggests the case is about which documents are "kept in a separate medical quality assurance file" and which are not. Gov't Reply Br. at 9–10. Instead, the court articulated explicit guidance as to what the statute covers: Section 1675 applies to records emanating from "activities to assess the *quality of medical care at IHS*." *Parker*, 2020 U.S. Dist. LEXIS 24911, at *28 (emphasis added). Finally, the Government also attempts to distinguish *Kulik v. United States*, 2016 U.S. Dist. LEXIS 84802 (D. Alaska June 28, 2016), which stands

---

[3] Ex. 36 (Indian Health Service, IHCIA Reauthorization Summary Table (2010), https://www.ihs.gov/sites/newsroom/themes/responsive2017/display_objects/documents/IHCIA_Reauthorization_Summary_Table_IHS.pdf) (emphasis added); *see also* Ex. 37 (Northwest Portland Area Indian Health Board, Summary of Indian Health Care Improvement Act Provisions Passed in the Patient Protectionand Affordable Care Act, http://leg.wa.gov/JointCommittees/Archive/HRI/Documents/May2010/IHCIASummary.pdf) (summarizing statute the same way).

[4] *See* Ex. 31 at 1 n.5 (Letter from Sen. Tom Udall, et al., to Health and Human Services Secretary Alex Azar (Mar. 4, 2020), https://www.tomudall.senate.gov/imo/media/doc/2020-03-04%20LETTER%20HHS%20Integritas%20Report%20(Signed%20-%20Corrected)[1].pdf) (stating Section 1675 is "inapposite" to the Integritas Report).

for the proposition that a court applying Section 1675 looks at the substance and purpose of a document, not at the label administrators choose to apply to it. The court in *Kulik* found that Section 1675 did not apply to narrative statements made by healthcare providers who were addressing a medical malpractice incident alleged in a lawsuit. *Id.* at *7. The court reasoned that the agency could not transform the narratives – which were otherwise indisputably about the quality of medical care – "into medical quality assurance program's activities merely by forwarding [them] to risk management for medical review." *Id.* So too, here. IHS cannot transform the Integritas Report into a medical quality assessment simply by labeling it as such.

As much as the Government may want to convert a report about criminal conduct and accompanying administrative misfeasance into a medical quality assurance review, everything about the report – including its origins, its purpose, its authors, and its focus – and everything about the statute – including its text, its legislative history, and its interpretation by other courts – make that an impossibility.

## II.    The Government Has Failed to Satisfy Its Burden in Justifying Withholding Under Exemption 5

As an initial matter, the Government does not dispute that the deliberative process privilege under Exemption 5 does not shield from disclosure all reasonably segregable "purely factual, investigative" material within the report. *See Environmental Protection Agency v. Mink*, 410 U.S. 73, 88–89 (1973). As the Government's own declarants confirmed, IHS hired Integritas to, among other things, "(1) conduct a thorough review and analysis of the agency's compliance with existing laws, regulations, and policies regarding patient safety and protection of patients from sexual abuse and assault, (2) identify *facts* relating to IHS's policies and procedures regarding the reporting of allegations of sexual abuse of IHS patients by clinical staff, [and]

(3) identify any possible process or system failures and the contributing causes of any such process or system failures." Merrell Decl. ¶ 9 (emphasis added). The results of this "fact finding inquiry," *id.* ¶ 11, are simply not covered by the deliberative process privilege.

Moreover, the Integritas Report is neither predecisional nor deliberative, as required, and thus cannot be withheld under Exemption 5. IHS obviously needed no "deliberations" to conclude that employees' criminal conduct in sexually abusing minor patients is against its policy. To the extent that the Government is pointing to the particular steps the agency took to police such misconduct, on October 26, 2018, IHS announced major policy changes to address its failure to prevent Weber's decades-long pattern of sexual abuse.[5]  It did not hire Integritas until more than six months later, on May 13, 2019.[6] That timetable is fatal to the Government's conclusory claim that it intended to use the Integritas Report "to formulate and revise policies and standard operating procedures." *See* Merrell Decl. ¶ 13. The record shows that those policies and procedures had already been overhauled and publicly announced.

As a result, the Government cannot demonstrate, as it must under Exemption 5, that the report was "intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014). It is well established that the "privilege does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented

---

[5] *See* Ex. 20 (Letter from Indian Health Service Principal Deputy Director Michael Weahkee (Oct. 26, 2018), https://www.ihs.gov/sites/newsroom/themes/responsive2017/display_objects/documents/2018_Letters/DTLL_10262018.pdf).

[6] *See* Ex. 27 (Press Release, IHS Principal Deputy Director Michael Weahkee statement on announcement of contract for medical quality assurance review (May 13, 2019), https://www.ihs.gov/sites/newsroom/themes/responsive2017/display_objects/documents/Statement_MedicalQualityAssuranceReview_0513201 9.pdf).

judgment." *Adelante Ala. Worker Ctr. v. U.S. Dep't of Homeland Sec.*, 376 F. Supp. 3d 345, 357 (S.D.N.Y. 2019). The Government's failure to identify any specific policy objective is also fatal to its invocation of the consultant corollary. Pls.' Mem. Of L. in Supp. of Summ. J., Dkt. No. 23, at 36 ("Pls.' Br."). A report from an outside consultant falls under Exemption 5 only if it is used to formulate policy. *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 73 (2d Cir. 2002).

Here, because the report focused on a *factual* assessment of *former* practices, it is, by definition, neither "predecisional" nor "deliberative." *See* Merrell Decl. ¶ 9 (Integritas was hired to "identify facts" regarding and determine compliance with existing sexual abuse policies). Indeed, IHS itself characterized the investigation as a compliance assessment of existing policies. *Id*. As valuable as an audit of past practices and policies may be, it does not constitute a deliberative document used to shape a future policy, as Exemption 5 requires.

Finally, the Government cannot invoke Exception 5 because it has failed to establish specific, foreseeable harm resulting from the disclosure, as required by the 2016 amendments to FOIA. Pls.' Br. at 33–35. The crux of the Government's foreseeable harm case is its generalized contention that disclosure would have a chilling effect on participation in future investigations because participants had an expectation of confidentiality. Gov't Reply Br. at 13. But this sweeping contention, which could apply to any investigation, falls far short of what is required. The Government is required to articulate a connection between the specific content of the material withheld and the specific harm that allegedly would result from its release. *See, e.g.*, *NRDC v. United States EPA*, 2019 U.S. Dist. LEXIS 148611, at *16 (S.D.N.Y. Aug. 30, 2019). The sole paragraph in the Merrell Declaration addressing this issue does not explain why this investigation required confidentiality or why releasing this report would deter cooperation with future reviews, *see* Merrell Decl. ¶ 12 – including in circumstances where the statute does not

prevent its release to Congress, *see* 25 U.S.C. § 1675(e)(2). Moreover, the Government's contention is further undermined by the declaration of Dr. Butterbrodt – completely ignored by the Government – confirming that when he was interviewed he was not in any way promised confidentiality, yet provided full details of his experience with both Dr. Weber and the administrators who failed to address his misconduct. Butterbrodt Decl. ¶ 13 (stating under oath that "[t]he Integritas investigators did not state that the interview was confidential or that my identity would remain confidential"). The Government, on the other hand, does nothing more than to assert vaguely, in the passive voice, that participants had "an expectation that the information they provided would be kept confidential," Merrell Decl. ¶ 12, offering no evidence as to whether that expectation actually existed and/or whether it was reasonable.

### III.     The Government Has Failed to Satisfy Its Burden for Withholding Under Exemption 6

In its opening brief, the Government relegated its argument for privacy under Exemption 6 to a footnote. Gov't Br. at 12 n.4. It now tries to resurrect the argument but its failure to make any specific showing, or a factual record supporting it, renders that effort unavailing.

Plaintiffs do not contest that the names of victims or patients who have not been identified publicly should not be disclosed. As to others named in the report, however, the Government offers nothing but a "conclusory statement[]" that does not justify nondisclosure under FOIA Exemption 6. *Ossen LLC v. United States Cent. Command*, 2019 U.S. Dist. LEXIS 169751, at *8 (S.D.N.Y. Sept. 30, 2019); Gov't Reply Br. at 14. To invoke Exemption 6, the Government must show that the information withheld is private and, if so, that the affected individuals' privacy interests outweigh the public interest in the information at issue. *Ossen LLC*, 2019 U.S. Dist. LEXIS 169751, at *9–10 (holding that under Exemption 6, the court must

11

"balance the public's need for the information against the individual's privacy interest"). Here, the Government ignores the robust factual record showing that privacy interests are minimal given the extensive details about the Weber case that are matters of public record via the various criminal prosecutions, congressional hearings, government investigations, and news reports. *See* Exs. 1–3, 7–8, 11–18, 22–23, 31–32. The Government has made no attempt to establish factually that any privacy interest remains, did not address any offsetting public interest, and failed to show that the privacy interest triumphs over the public interest in disclosure. Without that, it cannot rely on Exemption 6 to withhold information.

## IV.    If Needed, *In Camera* Review Is Warranted

The Government asserts that *in camera* review is only appropriate where an agency has made vague or sweeping claims as to a record and does not substantiate its assertion of a FOIA exemption. Gov't Reply Br. at 14. The Government fails to acknowledge that, if the Court credits its claims, this is the exact predicament that the Court faces with respect to the Integritas Report. Here, many of the Government's unvarnished claims – that the report addresses medical care, that it was used to set policy, and that it implicates personal privacy interests that outweigh the public interest – are undercut by the substantial factual record submitted by Plaintiffs. *See, e.g.*, *Johnson v. Exec. Office for United States Attys.*, 310 F.3d 771, 776 (D.C. Cir. 2002) (burden is on Government to "provide a detailed justification for" its decision not to release report).

While that record – and the governing law – are more than sufficient to reject the Government's conclusory claims, if there is any question, these are precisely the kind of circumstances where *in camera* review of a single document could be used to assess the strength of the Government's vague assertions.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask this Court: (i) to deny IHS's motion

for summary judgment and to grant Plaintiffs' cross-motion for summary judgment; (ii) to direct

IHS to make the Report public within 20 days; (iii) to award Plaintiffs the costs of this

proceeding, including reasonable attorney's fees, as expressly authorized by FOIA, 5 U.S.C.

§ 552(a)(4)(E); and (iv) to grant such other and further relief as the Court deems just and proper.

Dated: New York, NY
        November 2, 2020

Respectfully submitted,

By: /s/*Matthew E. Kelley*
        Seth D. Berlin
        Matthew E. Kelley (admitted *pro hac vice*)
Ballard Spahr LLP
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
Phone: 202-508-1122
Fax: 202-661-2299
Email: berlins@ballardspahr.com
        kelleym@ballardspahr.com

*Counsel for Plaintiffs Dow Jones & Company, Inc.
and Christopher Weaver*

David E. McCraw
Al-Amyn Sumar
Alexandra Settelmayer
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: 212-556-4031
Fax: (212) 556-4634
Email: mccrad@nytimes.com
        al-amyn.sumar@nytimes.com
        alexandra.settelmayer@nytimes.com

*Counsel for Plaintiff The New York Times Company*

13